1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WEDI CORP., an Illinois corporation,

                             Plaintiff,

      v.

HYDROBLOK GRAND INTERNATIONAL
LTD., a Canadian corporation; HYDROBLOK
GRAND INTERNATIONAL INC., a Nevada
corporation; and HYDRO-BLOK USA LLC, a
Washington limited liability company,

                           Defendants.

C23-0452 TSZ

ORDER

THIS MATTER comes before the Court on a motion brought by plaintiff wedi Corp. ("wedi") to transfer this action back to the District of Nevada, docket no. 57.  wedi has also brought a motion, docket no. 58, to extend the deadline for filing a pleading or motion in response to defendants' counterclaim, docket no. 56.  Having reviewed all papers filed in support of, and in opposition to, both motions, the Court enters the following Order.

**Background**

Over eight years ago, wedi was named as a defendant in a declaratory judgment action filed in this district by Hydro-Blok USA LLC ("Hydro-Blok"), Hydroblok International Ltd., and Brian Wright.  *See* Compl. & Am. Compl. (C15-615, docket nos. 1 & 7).  wedi initiated a contemporaneous lawsuit against Wright, Hydro-Blok, and Sound

ORDER - 1

Product Sales L.L.C. ("Sound Product").  _See_ Compl. (C15-671, docket no. 1).  The two

cases were eventually consolidated, _see_ Order (C15-671, docket no. 37), and wedi's

claims, counterclaims, and counter-counterclaims (collectively, "Claims") were resolved

via a combination of arbitration proceedings,[1] dispositive motion practice,[2] settlement,[3]

and voluntary dismissal.  The latter means of disposition came after remand from the

Ninth Circuit, and a few weeks before trial.  At that time, wedi moved, pursuant to

Federal Rule of Civil Procedure 41(a)(2), for voluntary dismissal of its remaining Claims

under the Lanham Act and CPA, and the Court dismissed those Claims with prejudice,

reinstated a cost award against wedi that had been entered before wedi's appeal, and

---

[1] Pursuant to agreements between wedi, Wright, and Sound Product, wedi's breach of contract, breach of fiduciary duty, civil conspiracy, unjust enrichment, and trade secret claims against Wright and/or Sound Product were arbitrated; the arbitrator found against wedi and in favor of Wright and Sound Product on all claims other than breach of contract, as to which the arbitrator awarded to wedi only nominal damages of $1.00.  _See_ Award (C15-671, docket no. 101-3); Order (C15-671, docket no. 128); Partial Judgment (C15-671, docket no. 129).

[2] By Order entered May 30, 2018, the Court dismissed wedi's counterclaims against Hydroblok International Ltd. for aiding and abetting a breach of fiduciary duty, conspiracy, and violation of Washington's Uniform Trade Secrets Act.  _See_ Order (C15-671, docket no. 152).  By Order entered June 18, 2019, the Court dismissed wedi's Claims for abuse of process, violation of the Lanham Act, and violation of Washington's Consumer Protection Act ("CPA").  _See_ Order (C15-671, docket no. 260).  wedi appealed the Lanham Act and CPA rulings, and the Ninth Circuit affirmed in part and reversed in part.  _See_ 9th Cir. Mem. Dispo. (C15-671, docket no. 335).  The Ninth Circuit remanded for further proceedings concerning whether the statement "Hydro-Blok Products are ICC-ES Tested and Certified" constituted a false advertisement.  _Id._ at 4–5; _see also_ Order at 2 n.1 (C15-671, docket no. 369) (noting that ICC-ES is an acronym for International Code Council – Evaluation Service).

[3] As a result of the parties' settlement, wedi's Claims for tortious interference with contract and tortious interference with prospective advantage were dismissed with prejudice and without costs.  _See_ Order (C15-671, docket no. 295).  Under the terms of the settlement, wedi retained the right to appeal the Court's Lanham Act and CPA rulings, which were memorialized in a partial judgment.  _See id._ at 2 n.1; _see also_ Partial Judgment (C15-671, docket no. 296).

1  allowed Wright, Sound Product, Hydro-Blok, and Hydroblok International Ltd. to tax

2  costs incurred on appeal and remand.  *See* Order (C15-671, docket no. 369).  Judgment

3  was entered and the consolidated cases were closed on September 23, 2021.  *See*

4  Judgment (C15-617, docket no. 370).

5       In March 2022, wedi commenced this litigation in the District of Nevada against

6  Hydroblok Grand International Ltd. ("Hydroblok Grand"), Hydroblok Grand

7  International Inc. ("Hydroblok–Nevada"), and Hydro-Blok.[4]  *See* Compl. (docket no. 1).

8  In the operative pleading, wedi asserts two claims against all defendants, one under the

9  Lanham Act and the other under Nevada's Deceptive Trade Practices Act and Nevada

10  Revised Statute 41.600.  Compl. at ¶¶ 39–51.  Both claims relate to defendants'

11  statements concerning ICC-ES certification of their products, which wedi asserts are false

12  and/or misleading.  *Id.* at ¶¶ 42 & 49; *see also* *supra* note 2 (defining ICC-ES).  The

13  factual predicates for these claims are similar, if not identical, to those relating to the

14  Lanham Act and CPA Claims that wedi voluntarily dismissed in the prior litigation.

15

16  _____

17  [4] The parties agree that Hydro-Blok was a party to the earlier actions, but they dispute whether
    Hydroblok Grand is a successor to Hydroblok International Ltd., which was also a party in the

18  previous cases.  wedi has submitted British Columbia Registry Services summaries that suggest
    both Hydroblok Grand and Hydroblok International Ltd. were active as April 5, 2022, and

19  therefore do not have a successor-predecessor relationship.  *See* wedi's Ex. 22 (docket no. 32-
    22).  In contrast, defendants rely on deposition testimony indicating that Hydroblok International

20  Ltd. stopped selling Hydroblok products on November 1, 2017, when they "made the
    amalgamation with the factory with the new company," and that the "factory has part ownership

21  now in Hydroblok Grand."  *See* Koch Dep. at 39:11–40:6, Ex. D to Whitaker Decl. (docket
    no. 63-4).  This testimony by Kenny Koch, who claims to own a majority (51%) share of

22  Hydroblok Grand, *id.* at 37:18–21, is inconsistent with defendants' Corrected Corporate
    Disclosure Statement ("Corp. Discl. Stmt."), docket no. 61, which represents that Hydroblok

23  Grand is a wholly-owned subsidiary of Hydroblok–Nevada.

1    After this matter had been pending for over a year in the District of Nevada, it was

2    transferred to this district pursuant to a six-page order by the Honorable Cristina D. Silva,

3    which indicates, in relevant part:

> Because I find that venue is improper in the District of Nevada, I grant the
> defendants' motion to transfer. . . .  I agree with wedi that the defendants
> incorrectly attempt to transfer this action under 28 U.S.C. § 1406(a), which
> mandates dismissal or transfer only when venue is wrong or improper. . . .
> The District of Nevada may well have been a proper venue for the instant
> suit, but for wedi's filing of a substantially similar suit in the Western District
> of Washington in 2015. . . .  I construe the defendants' motion to transfer as
> one based primarily on the first-to-file rule, rather than on 28 U.S.C. § 1406.
> I do so because the defendants concede that "Nevada as a venue would be
> completely appropriate had [the Washington case] not been previously
> litigated.". . .  Because wedi brought this case almost seven years after
> initiating its Washington lawsuit against the defendants—and because the
> parties and issues are substantially similar in both cases—I find that the first-
> to-file rule should apply here.

Order at 1–2 & 5–6 (docket no. 43) (alteration in original, citations omitted).  The first-

to-file rule, on which Judge Silva based the transfer of this action, is a "doctrine of

federal comity" that allows a district court to decline jurisdiction when an action involves

the same parties and issues as an already-filed matter in another district.  *See* *Pacesetter*

*Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982) (affirming the dismissal

of a patent infringement dispute that was essentially identical to an earlier-filed matter

then pending in another district).  Under the first-to-file rule, a court may stay its own

proceedings, to promote judicial economy, consistency, and comity, after considering

three factors:  chronology of the lawsuits, similarity of the parties, and similarity of the

issues.  *See* *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239–40

(9th Cir. 2015).  wedi contends that Judge Silva erred in relying on the first-to-file rule to

ORDER - 4

1   transfer this case, that this Court therefore lacks jurisdiction, and that the action should be

2   transferred back to the District of Nevada.

3   **Discussion**

4   **A.**      **Section 1406**

5          A case may be dismissed or transferred pursuant to 28 U.S.C. § 1406 if it was filed

6   in the "wrong division or district."  28 U.S.C. § 1406(a).  With certain exceptions not

7   relevant in this matter, the proper venue for a civil action is one of the following:  (i) if all

8   defendants are residents of the same state, then a judicial district in such state in which

9   any defendant resides, (ii) a judicial district in which the claim arose or in which the

10  property at issue is situated, or (iii) if neither (i) nor (ii) apply, then a judicial district in

11  which any defendant is subject to personal jurisdiction.  28 U.S.C. § 1391(b).  Residency

12  for purposes of venue is different from citizenship for purposes of diversity; a business

13  entity that has the capacity to be (and is) sued is a "resident" of any judicial district in

14  which it is subject to personal jurisdiction.  _Id._ at § 1391(c)(2).  A foreign defendant may

15  be sued in any judicial district.  _See id._ at § 1391(c)(3).

16         The parties agree that Hydroblok Grand is a Canadian company and Hydroblok–

17  Nevada is a Nevada corporation.  _See_ Corp. Discl. Stmt.; Compl. at ¶¶ 4 & 5.  Thus, both

18  Hydroblok Grand and Hydroblok–Nevada could be sued in the District of Nevada.  The

19  operative pleading alleges that Hydro-Blok, which is a Washington limited liability

20  company with its principal place of business in Washington, uses the same website as

21  Hydroblok Grand to market and sell products in Nevada, imports products from Canada

22  and distributes them in Nevada, and has at least two sales agents responsible for product

23

ORDER - 5

1  sales in Nevada.  Compl. at ¶¶ 6 & 9–12.  These allegations support treating Hydro-Blok

2  as a resident of, and subject to suit in, the District of Nevada.  As a result, venue was

3  proper in the District of Nevada.  *See* 28 U.S.C. § 1391(b)(1).  Judge Silva correctly

4  concluded that this case could not be transferred pursuant to § 1406 because Nevada was

5  a proper venue and the matter was not filed in the "wrong" district.

6  **B.    Section 1404**

7       A case may also be transferred, for "the convenience of parties and witnesses" and

8  "in the interest of justice," to another district in which "it might have been brought" or as

9  to which "all parties have consented."  28 U.S.C. § 1404(a).  Without evaluating whether

10  this action could have been brought in the Western District of Washington, Judge Silva

11  relied on the first-to-file rule to conclude that transfer was warranted.  The Ninth Circuit

12  has, however, expressly rejected the concept that the first-to-file rule negates § 1404(a)'s

13  requirement that a party seeking a transfer must show the case could have been brought

14  in the proposed judicial district.  *See* *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018).[5]

15  In *Bozic*, which addressed what was then "an issue of first impression in the courts of

16  appeals," the Ninth Circuit reasoned that allowing the judge-made first-to-file rule to

17  contravene the plain language of a "congressionally enacted statute" was a result it could

18  not "countenance."  *Id.*  The *Bozic* Court explained that a district court's discretion is

19

20  [5] Judge Silva did not mention *Bozic* and, with one exception, cited to decisions predating *Bozic*.
    *See* Order (docket no. 43).  The exception, namely *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d
21  700 (N.D. Cal. 2021), is distinguishable because both the earlier and later-filed cases involved
    only one defendant, as to which the initial forum (the Southern District of New York) had
22  personal jurisdiction, and the plaintiffs in the second matter were members of the nationwide
    class in the first action.  *See* *id.* at 705.

23

ORDER - 6

1  cabined by the requirements of § 1404(a), and the first-to-file rule merely "guides" the

2  exercise of discretion in "handling related cases."  *See id.*; *see also In re SK hynix Inc.*,

3  847 F. App'x 847, 853–54 (Fed. Cir. 2021) (rejecting the proposition that the first-to-file

4  rule "compel[s] a transfer between federal forums when § 1404(a)'s threshold conditions

5  are not met," citing *Bozic*).  The Court agrees with wedi that Judge Silva's reliance on the

6  first-to-file rule was inconsistent with Ninth Circuit jurisprudence.  The Court must still,

7  however, evaluate whether the transfer to this district was nevertheless proper under

8  § 1404(a).

9  **C.    Jurisdiction**

10        Pursuant to § 1404(a), the question before the Court is whether the Western

11 District of Washington is a judicial district in which this case originally might have been

12 brought.  The parties do not dispute that this district is a proper venue for wedi's claims

13 against the Washington and Canadian entities, *i.e.* Hydro-Blok and Hydroblok Grand,

14 respectively.  The remaining issue is whether the record supports specific personal

15 jurisdiction over Hydroblok–Nevada.

16        The Court may exercise specific personal jurisdiction only if a defendant has

17 "sufficient contacts with the forum state in relation to the cause of action."  *See Sher v.*

18 *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  The sufficiency of a defendant's contacts

19 with Washington must be evaluated using the following three-part test:  (i) whether the

20 defendant purposefully directed its activities at the forum or a resident of Washington;

21 (ii) whether the plaintiff's claims arise out of or relate to the defendant's forum-related

22 activities; and (iii) whether haling the defendant into Washington comports with notions

23

1  of fair play and substantial justice or, in other words, is reasonable.[6]  *See id.*; *see also*

2  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018).

3  This minimum-contacts test seeks to ensure that a defendant will not be forced into a

4  jurisdiction "solely as a result of random, fortuitous, or attenuated contacts."  *Freestream*,

5  905 F.3d at 603 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

6  Hydroblok–Nevada concedes that this Court has "at least specific personal jurisdiction"

7  over it.  *See* Defs.' Resp. at 11 (docket no. 62).  Such concession does not, however,

8  discharge the Court from its duty to engage in the minimum-contacts analysis.  *See*

9  *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) ("[T]he power of a District Court under

10  § 1404(a) to transfer an action to another district is made to depend not upon the wish or

11  waiver of the defendant but, rather, upon whether the transferee district was one in which

12  the action 'might have been brought' by the plaintiff.").

13      As the parties moving for a transfer, defendants bore the burden of demonstrating

14  that the § 1404(a) criteria were met, *see* *Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 774

15  (N.D. Cal. 2015) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270,

16  279 (9th Cir. 1979)), but they failed to even identify, let alone persuade the District of

17  Nevada to perform, the requisite analysis.  In response to wedi's motion to retransfer,

18

19

———————————

20  [6] The reasonableness of requiring a defendant to litigate in a particular forum must be assessed by balancing seven factors:  (i) the extent of the defendant's purposeful interjection into the forum's affairs; (ii) the burden on the defendant of defending itself in the forum; (iii) the extent

21  of any conflict with the sovereignty of the defendant's state; (iv) the forum's interest in adjudicating the dispute; (v) the most efficient judicial resolution of the controversy; (vi) the

22  importance of the forum to the plaintiff's interest in convenient and effective relief; and (vii) the existence of an alternative venue.  *See Freestream*, 905 F.3d at 607.

23

ORDER - 8

1  defendants have not made a prima facie showing of purposeful availment.  *See* *Data*

2  *Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (holding that,

3  when a court decides on the basis of affidavits, as opposed to an evidentiary hearing, only

4  a prima facie showing of jurisdiction is required).  Thus, the Court is not satisfied, on the

5  current record, that personal jurisdiction over Hydroblok–Nevada exists.

6        The Court is faced with an unusual situation.  Although the Court must, for

7  purposes of evaluating personal jurisdiction, accept as true any uncontroverted

8  allegations in the operative pleading, *see*, *e.g.*, *Boschetto v. Hansing*, 539 F.3d 1011,

9  1015 (9th Cir. 2008), the Complaint in this matter is devoid of information concerning

10  whether Hydroblok–Nevada engaged in forum-related activities.  The operative pleading

11  alleges that Hydroblok–Nevada "imports Hydro-Blok Products into the United States

12  from China and sells to wholesalers, retailers, end users, and others in this country,

13  including in Nevada," and that Hydroblok–Nevada "uses the same website and the same

14  marketing materials and advertisements as" Hydro-Blok and Hydroblok Grand "to

15  market and sell its products to persons in this country, including in Nevada."  Compl. at

16  ¶ 5.  According to wedi, Hydroblok Grand sells the products at issue to Hydro-Blok and

17  Hydroblok–Nevada, for distribution in "Nevada and elsewhere."  *Id.* at ¶¶ 4 & 9–12.

18  The Complaint contains no explicit allegation that Hydroblok–Nevada markets, sells,

19  distributes, or otherwise directs activities toward Washington or its residents.

20        In addition, although the Court could resolve any conflicting statements, if they

21  were contained in affidavits, *see* *Boschetto*, 539 F.3d at 1015 (citing *Schwarzenegger v.*

22  *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)), the parties have offered only

23

1    their respective attorneys' arguments, which are not evidence.  Defendants contend that

2    the website used by all three entities, <hydroblok.com>, is owned and maintained by

3    Hydroblok–Nevada, and that the website targets consumers in Washington.  Defs.' Resp.

4    at 9–10 (docket no. 62).  In addition, the allegedly false "ICC-ES certified" statement

5    appears on the website.  *See* Ex. C to Whitaker Decl. (docket no. 63-3).  Defendants also

6    assert that Hydroblok–Nevada is responsible for obtaining ICC-ES certifications and for

7    providing marketing materials (containing the "ICC-ES certified" representation) to

8    distributors and resellers across the country, including in Washington.  *See* Defs.' Resp.

9    at 10 (docket no. 62).  Defendants have not, however, provided any declaration or sworn

10   testimony to support their statements concerning Hydroblok–Nevada's ownership and

11   maintenance of the website or its involvement in the ICC-ES certification process or

12   circulation of related advertisements.

13          In its reply, wedi accuses defendants of improperly truncating a screen shot of the

14   <hydroblok.com> website[7] and thereby concealing the fact that Hydroblok–Nevada has

15   no sales representatives in Washington.  *See* Pl.'s Reply at 6 n.4 (docket no. 64).  wedi

16   also states that Hydroblok–Nevada "does not do business in Washington; is not registered

17   to do business in Washington; pays no taxes in Washington; has no offices, registered

18   agent, [or] employees . . . in Washington; receives no income from any sales in

19   Washington; and otherwise has no physical or commercial presence in this state." *Id.* at

20

21

22   [7] According to wedi, the <hydroblok.com> website suggests that defendants divide their
     responsibilities regionally, with Hydroblok–Nevada handling sales in Canada and the eastern
     United States, which does not include Washington.  *See* Ex. A to Kanter Decl. (docket no. 65-1).

23

6.  wedi offers no evidentiary support for these observations, arguing instead that defendants have "effectively admit[ted]" such facts, *id.*, without citing to any portion of the record in which defendants made such concessions.

Finally, unlike in the usual situation in which jurisdictional discovery is permitted, the plaintiff in this action (*i.e.*, wedi) has no incentive to develop facts supporting this Court's personal jurisdiction over Hydroblok–Nevada.  The Court, however, has serious concerns that, if this litigation is returned to the District of Nevada without giving the parties an opportunity to conduct jurisdictional discovery, supplement the record, and provide further briefing, the requisite affidavits will simply be presented to the District of Nevada on a renewed request to transfer (or to re-retransfer).  Judicial economy would not be served by leaving open the possibility of what would be the third motion relating to the proper forum for this matter.  Thus, the Court will exercise its broad discretion to allow jurisdictional discovery.  *See*, *e.g.*, *Data Disc*, 557 F.2d at 1285 n.1.

## **Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)      wedi's motion to transfer this action back to the District of Nevada, docket no. 57, is RENOTED to August 18, 2023.

(2)      Jurisdictional discovery shall be completed by July 21, 2023.  Supplemental briefs, not to exceed twelve (12) pages in length, and supporting declarations or affidavits shall be filed by August 14, 2023.  Optional supplemental rebuttal briefs, not to exceed six (6) pages in length, are due by the new noting date.  No further materials or motions shall be filed unless requested or authorized by the Court.

ORDER - 11

1    (3)    wedi's unopposed motion, docket no. 58, to extend the deadline for its

2    responsive pleading or motion in answer to defendants' counterclaim, is GRANTED.

3    The Court will set a deadline, if appropriate, after it rules on wedi's motion for retransfer.

4    (4)    wedi's motion to stay proceedings, docket no. 66, is GRANTED as follows.

5    This case is STAYED except with respect to jurisdictional discovery and supplemental

6    briefing and filings relating to wedi's motion for retransfer.  The deadlines for conducting

7    a Rule 26(f) conference, exchange of initial disclosures, and submission of a Joint Status

8    Report set forth in the Order entered April 6, 2023, docket no. 55, are STRICKEN, and

9    will be reset, if appropriate, after the Court rules on wedi's motion for retransfer.

10   Defendants' motion for sanctions, docket no. 67, is STRICKEN without prejudice, and

11   the Court will reinstate the motion, if appropriate, after the Court rules on wedi's motion

12   for retransfer.

13   (5)    The Clerk is directed to send a copy of this Order to all counsel of record.

14   IT IS SO ORDERED.

15   Dated this 19th day of May, 2023.

16

17

18                                                    Thomas S. Zilly
                                                     United States District Judge

19

20

21

22

23

ORDER - 12